***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for clarifying modifications to the findings of fact; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff sustained an injury to his right hand on or about May 2, 2001. Said injury arose out of and in the course of plaintiff's employment with defendant-employer.
4. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act and were subject to and bound by the provisions of the Act at the time of said injury by accident and an employer-employee relationship existed between the named employee and named employer.
5. Plaintiff's average weekly wage is $495.66 with a compensation rate of $330.44.
6. The parties stipulated into evidence as Stipulated Exhibit 1, the Pre-Trial Agreement with attached medical records.
7. The parties stipulated into evidence as Stipulated Exhibit 2, additional medical records from UNC and Durham Regional.
8. The parties stipulated into evidence as Stipulated Exhibit 3, plaintiff's medical records from May 2001.
9. The parties stipulated into evidence as Stipulated Exhibit 4, an I.C. Form 25T.
10. The parties stipulated into evidence as Stipulated Exhibit 5, an I.C. Form 25P.
11. The parties stipulated into evidence as Stipulated Exhibit 6, photographs labeled A-E.
12. The parties stipulated into evidence plaintiff's Supplemental Answers to Defendants' First Set of Interrogatories.
13. The depositions of George S. Edwards, Jr., M.D., William J. Mallon, M.D., and William A. Somers, M.D. are a part of the evidentiary record in this case.
 *********** EVIDENTIARY RULING
Plaintiff's motion dated June 24, 2003 to admit additional evidence to the evidentiary record of this case including an affidavit of Stephanie Reed and medical bills and records from Triangle Orthopaedic Associates in Durham, North Carolina is hereby GRANTED.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing in this matter, plaintiff was thirty-two years old. Plaintiff quit high school in the ninth grade to support his sick parents and has not earned a GED. Plaintiff's work history included being a doffer at Burlington Industries and then working in heating and air conditioning as a sheet metal mechanic installing insulation and ductwork. Plaintiff is right-hand dominant and his work history consists of only manual labor including lifting greater than ten pounds.
2. On May 2, 2001, plaintiff was employed by defendant-employer as a sheet metal mechanic. Plaintiff's job duties included taking blueprints and installing sheet metal pursuant to those prints. Plaintiff would put the ductwork together, put it in place, and screw it in. Plaintiff's job regularly involved lifting greater than ten pounds and using his right arm.
3. On May 2, 2001, plaintiff was working at B Building on Manning Drive on the UNC campus. Plaintiff was installing ductwork at a height of approximately sixteen feet while standing on a ten-foot ladder on a concrete floor and using a duct jack to place the ductwork. On this date, a 600-pound duct fell on plaintiff's right hand fingers and swung down knocking him off the ladder where he landed on all fours on the concrete floor. Plaintiff immediately reported this incident to his supervisor.
4. Plaintiff proceeded immediately to the UNC Hospitals emergency room and presented with a severe right hand injury and right shoulder pain. Plaintiff was diagnosed with a complete dislocation of the PIP joint with probable fracture fragment and his right hand was placed in a splint.
5. Plaintiff returned to work with defendant-employer on Monday and Tuesday, May 7 and 8, 2001 even though he was unable to perform any manual labor on those days. Plaintiff's helper carried his tools while plaintiff instructed him where to hang the ductwork and drill the holes. Thereafter, plaintiff was out of work with the flu for several days. During this time, plaintiff felt pain in his right shoulder, back, and knees.
6. Plaintiff's work hours decreased in the weeks following his accident. Plaintiff worked 26.5 hours for the pay period ending May 13, 2001, three hours for the pay period ending May 20, 2001, and eight hours for the pay period ending May 27, 2001. Plaintiff resigned from his job with defendant-employer on or about May 31, 2001. At this time, defendants were not paying plaintiff's medical bills nor sending him for medical treatment. Plaintiff did not have health insurance at this time.
7. Plaintiff began employment with Lee's Heating and Air Conditioning on June 6, 2001. Plaintiff had a helper who did most of the lifting. Plaintiff continued to experience pain in his back, right hand, and shoulder. Plaintiff worked slower than was required and was not able to do his own lifting. Plaintiff was offered a helper's position by his supervisor at half his rate of pay; however, plaintiff was unable to perform the job duties of a helper because of his injuries and resigned on July 10, 2001.
8. On July 27, 2001, plaintiff presented to the UNC Memorial Hospital emergency room complaining of back pain, right hand pain, and right shoulder pain. Plaintiff's shoulder was also popping in and out of joint. Consequently, plaintiff was referred to Dr. Messer for an orthopedic consultation.
9. Although plaintiff, except for July 27, 2001, did not seek medical treatment for his conditions in June, July and until August 17, 2001, plaintiff did experience pain during this time period. Plaintiff did not seek medical treatment during these months because he did not have medical insurance, was not being provided medical treatment by defendant-carrier, and was unemployed.
10. Plaintiff presented to Dr. Messer on August 17, 2001 complaining of right hand pain and popping in his right shoulder. Plaintiff was diagnosed with right finger PIP joint flexion contracture with possible development of RSD and right shoulder pain. Dr. Messer recommended plaintiff undergo physical therapy for the hand and shoulder, use a TENS UNIT for his shoulder pain, and a joint jack splint on his right hand to straighten one of his injured fingers. Dr. Messer wrote plaintiff out of work at this time.
11. Plaintiff returned to Dr. Messer on September 21, 2001 continuing to have right shoulder, right hand, low back, and neck pain. At this visit, Dr. Messer ordered an MRI and released plaintiff to return to work with restrictions of no lifting greater than ten pounds and no repetitive use of his right arm.
12. Plaintiff's jobs as a heating and air mechanic involved lifting greater than ten pounds and repetitive use of the right arm. Plaintiff was not able to physically do the job as a heating and air mechanic or helper between the period of September 21, 2001 and October 12, 2001.
13. On or about October 11, 2001, Dr. Messer opined that the injuries plaintiff sustained from the May 2, 2001 accident caused him to have diminished capability of his right upper extremity. Dr. Messer stated that plaintiff's pain and limited range of motion interfered with his ability to use the right upper extremity normally and perform the tasks required of him as a construction worker. Dr. Messer felt plaintiff was then capable of working in a modified capacity where he does not have any heavy lifting of the right upper extremity or repetitive motion activities.
14. In accordance with Dr. Messer's instructions, plaintiff attempted to find a job within his work restrictions on or about October 16, 2001 at a Texaco station but was advised that there were no openings. Plaintiff visited the Employment Security Commission on or about October 17, 2001 to obtain assistance in finding a job; however, ESC advised plaintiff they could not help him so long as his work restrictions continued. Thereafter, plaintiff went to vocational rehabilitation which advised him that they would not be able to assist him with a job either. On October 26, 2001, plaintiff applied for a school bus job and food management position with the Burlington school system. Plaintiff's actions constitute a reasonable attempt to return to work within his restrictions.
15. Plaintiff returned to Dr. Messer with continuing right shoulder, arm, and hand pain. Plaintiff's MRI revealed signal change within the supraspanatus and rotator cuff tendon. Dr. Messer diagnosed plaintiff with right shoulder cuff tendonitis and opined that the diagnosis did not explain all of plaintiff's right upper extremity symptoms and arm and hand pain. Therefore, Dr. Messer recommended additional treatment, a second opinion with another physician, and continued plaintiff's work restrictions.
16. Plaintiff presented to orthopedic surgeon Dr. William A. Somers on December 13, 2001. Plaintiff told Dr. Somers about the May 2, 2001 accident and problems with his right hand, right shoulder, and low back that he had experienced since then. At this visit, Dr. Somers wrote plaintiff out of work. Dr. Somers opined that plaintiff's right shoulder condition and back symptoms were directly related to the May 2, 2001 accident and the treatment plaintiff had received for his right hand, right shoulder, and low back symptoms through December 13, 2001 was consistent with the injuries that plaintiff reported to him. Dr. Somers also opined that plaintiff would not have been able to do construction work from the time he stopped working until the time he first treated with him.
17. On January 23, 2002, plaintiff underwent an MRI arthrogram of his right shoulder which revealed a tear of the subscapularis tendon, subluxation of the long head of the biceps, and possible posterior labral injury.
18. On January 31, 2002, Dr. Somers recommended plaintiff consult with orthopedic surgeon Dr. William J. Mallon regarding his right shoulder condition. On February 5, 2002, plaintiff presented to Dr. Mallon and informed him that he had pain immediately in the right shoulder after the May 2, 2001 accident but his right hand was so badly injured that the shoulder became a secondary concern. Plaintiff also told Dr. Mallon that he developed severe pain in his shoulder within a day or two after the accident.
19. Dr. Mallon diagnosed plaintiff with chronic subscapularis rupture with biceps tendon subluxation of the right shoulder and recommended surgery. Dr. Mallon testified in his deposition that "I don't think anyone with a chronic subscap rupture and a biceps tendon subluxating because there's no chronic subscap in your dominant arm could do heavy labor such as HVAC work or construction or anything like that." Dr. Mallon also opined that the type of injury plaintiff sustained to his right shoulder is not something that can be cause by a degenerative condition or wear and tear over a number of years stating, "it is almost exclusively a traumatic injury."
20. Dr. Mallon and Dr. Somers performed right shoulder surgery on plaintiff on March 27, 2002.
21. Plaintiff has been under the treatment and care of Dr. Somers and Dr. Mallon since December 13, 2001 and continuing due to the injuries sustained in his May 2, 2001 accident.
22. Plaintiff was held out of work by Dr. Somers and/or Dr. Mallon from December 13, 2001 through June 24, 2002 due to the injuries sustained in his May 2, 2001 accident. Plaintiff was unemployed during this time.
23. Plaintiff has been released to return to work with restrictions of no overhead use of the right arm and no lifting greater than five pounds.
24. Dr. Edwards was requested by the defendant-carrier to perform a one-time examination of plaintiff's hand not his shoulder. Dr. Edwards only saw the patient one time and this was for an examination of his right hand; thus, Dr. Edwards' opinion regarding plaintiff's shoulder is given less weight than that of plaintiff's ongoing treating physicians.
25. Plaintiff returned to work on or about June 25, 2002 at wages of $10.00 per hour. At the time of the deputy commissioner hearing in this matter, plaintiff was working approximately twenty-five to forty hours per week.
26. There is no evidence of any accident or traumatic event other than plaintiff's May 2, 2001 accident that caused or could have caused the injuries to plaintiff's right hand, right shoulder, and back as described hereinabove. Plaintiff did not have any disabling back, shoulder or hand conditions prior to the May 2, 2001 accident.
27. Plaintiff's right shoulder injury and hand injury are permanent; however, plaintiff has not received a permanent impairment rating for his injuries at this time. Plaintiff has not yet reached maximum medical improvement.
28. On May 2, 2001, plaintiff sustained a compensable injury by accident resulting in a right finger PIP joint flexion, contracture, complete dislocation of the PIP joint with probable fracture fragment, reflex sympathetic dystrophy associated with the right hand injury, chronic subscapularis rupture with biceps tendon subluxation of the right shoulder, and back injury.
29. Plaintiff continues to receive medical treatment and there is a substantial risk that plaintiff will need additional medical treatment in the future for his compensable injuries.
30. Plaintiff was unable to earn to earn the same wages in the same or any other employment as a direct and proximate result of his compensable injury from July 10, 2001 through and including June 24, 2002.
31. From June 25, 2002 and continuing, plaintiff has been unable to earn the same wage in the same or any other employment as a direct and proximate result of his compensable injury and has earned a diminished wage.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On May 2, 2001 plaintiff sustained a compensable injury by accident resulting in a right finger PIP joint flexion as a direct and proximate result of his May 2, 2001 compensable injury, contracture, complete dislocation of the PIP joint with probably fracture fragment, reflex sympathetic dystrophy associated with the right hand injury, chronic subscapularis rupture with biceps tendon subluxation of the right shoulder, and back injury. N.C.G.S. § 97-2(6).
2. Plaintiff was unable to earn to earn the same wages in the same or any other employment as a direct and proximate result of his compensable injury from July 10, 2001 through and including June 24, 2002 and is entitled to receive temporary total disability compensation during this period. N.C.G.S. § 97-29.
3. From June 25, 2002 and continuing, plaintiff has been unable to earn the same wage in the same or any other employment as a direct and proximate result of his compensable injury and indeed has earned a diminished wage and is entitled to receive temporary partial disability compensation at the rate of 66 2/3% of the difference between his average weekly wage before his May 2, 2001 accident and the average weekly wage earned thereafter from July 25, 2002 and continuing. N.C.G.S. § 97-30.
4. Plaintiff is entitled to ongoing medical treatment reasonably intended to effect a cure, reduce his symptoms, or lessen his disability regarding his hand, shoulder, and lower back conditions. N.C.G.S. §97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the deputy commissioner and enters the following:
 AWARD
1. For his temporary total disability, defendants shall pay plaintiff compensation at the rate of $330.44 per week from July 10, 2001 through and including June 24, 2002. This amount has accrued and shall be paid in a lump sum subject to an attorney's fee awarded in Paragraph 3.
2. For his temporary partial disability, defendants shall pay plaintiff compensation at the rate of 66 2/3% of the difference between his average weekly wage before his May 2, 2001 accident and the average weekly wage earned thereafter from June 25, 2002 and continuing. Portions of this amount have accrued and shall be paid in a lump sum subject to an attorney's fee awarded in Paragraph 3.
3. An attorney's fee in the amount of twenty-five percent (25%) of compensation due plaintiff is reasonable and hereby approved for plaintiff's counsel. This amount shall be deducted directly from the lump sum owed to plaintiff and paid directly by defendants to plaintiff's attorney. Thereafter, plaintiff's counsel shall receive every fourth check.
4. Defendants shall provide all past and future medical treatment related to plaintiff's compensable injuries.
5. Defendants shall pay the costs.
This the ___ day of July 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER